**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| JUDY A.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )      Civil No. 3:23-cv-00870-SLS |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security,[2] | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## MEMORANDUM OPINION

In this action, Plaintiff Judy A. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed, making this matter ripe for review. (ECF Nos. 12, 13, 14.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 2, 15, 16) and pursuant to 42 U.S.C. § 405(g).

Plaintiff moves the Court to reverse the Commissioner's decision denying her social security benefits. (Plaintiff's Memorandum of Points and Authorities in Support of Her Motion for Summary Judgment (ECF No. 13) ("Pl.'s Mem.") at 17.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ"): (1) erred in evaluating Plaintiff's subjective

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Commissioner as Defendant in this action. No further action need be taken. 42 U.S.C. § 405(g).

complaints during the residual functional capacity ("RFC") assessment, and (2) misclassified Plaintiff's past relevant work during the step four analysis.  (Pl.'s Mem. at 9-17.)  In response, the Commissioner contends that substantial evidence supports both (1) the ALJ's RFC assessment, including the ALJ's consideration of Plaintiff's subjective complaints, and (2) the ALJ's reliance on the Vocational Expert's ("VE") testimony regarding Plaintiff's past relevant work. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 14) ("Def.'s Mem.") at 13-25.)

For the reasons set forth below, the Court finds that the ALJ's consideration of Plaintiff's subjective complaints comports with applicable legal standards and that substantial evidence supports the ALJ's RFC determination.  In addition, the Court finds no error in the ALJ's classification of Plaintiff's past relevant work.  Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 12), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 14), and AFFIRM the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On October 14, 2020, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on September 1, 2019.  (Administrative Record ("R.") at 70.)[3]  In her application, Plaintiff alleged that she suffers from spondyloarthritis, knee pain status post replacement, and one leg being shorter than the other.  (R. at 71.)  The SSA denied Plaintiff's claims initially, (R. at 87-91), and again upon reconsideration (R. at 98-102).  Plaintiff requested a hearing before an ALJ, and one was held on June 5, 2023.  (R. at 34-69, 103.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion.  The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

2

On June 21, 2023, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act").  (R. at 17-29.)  On November 14, 2023, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-6.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* § 404.1520(a)(4)(ii).  At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations.  *Id.* § 404.1520(a)(4)(iii).  Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments.  *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute

[its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 17-29); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2019 (the alleged onset date).  (R. at 19.)  At step two, the ALJ found Plaintiff suffered from the severe impairments of degenerative joint disease of the right knee, status post total knee replacement and revision, right subtrochanteric fracture, status post intermedullary nailing, degenerative disc disease and scoliosis of the lumbar spine, status post multiple surgeries, bilateral trochanteric bursitis, and  obesity.  (R. at 19.)  At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 22.)

The ALJ then determined Plaintiff's RFC.  (R. at 23.)  Based on the record, the ALJ found that Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations: "[Plaintiff] can frequently kneel, crouch, and crawl; occasionally

climb; but can never be exposed to vibration.  She requires the use of a cane to ambulate."  (R. at 23.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints.  (R. at 23, 25.)  Plaintiff testified that she cannot work because she experiences "pain in her neck, back, hips, knees, and hands," which makes it difficult for her to grasp and hold objects, "look at a computer screen, walk, stand, balance, bend, squat, lift, twist, and focus."  (R. at 23.)  She reported being most comfortable in a reclining position and stated that she also lies down with her legs elevated for some portion of the day.  (R. at 23.)  Plaintiff stated that she has had multiple surgeries, including a recent back surgery, and requires an assistive device to ambulate.  (R. at 23.)  Plaintiff testified that she could stand and ambulate with an assistive device for up to five minutes and lift up to ten pounds.  (R. at 23.)

Next, the ALJ considered Plaintiff's activities of daily living.  (R. at 23, 25.)  Plaintiff reported that she could care for her personal needs but had difficulty dressing.  (R. at 23.)  She stated that she could perform light housework for a short period of time, drive short distances three times per week, prepare simple meals, and occasionally go to the movies or out to eat.  (R. at 23.)

The ALJ then detailed Plaintiff's medical records pertaining to her impairments.  (R. at 24-25.)  The ALJ acknowledged Plaintiff's history of right hip fracture, bilateral hip bursitis, and right knee impairments.  (R. at 24.)  In January 2019, Plaintiff fractured her right subtrochanteric and required surgical intermedullary nailing.  (R. at 24.)  After the surgery, Plaintiff complained of knee pain and displayed limited range of motion in that joint.  (R. at 24.)  In June 2019, diagnostic imaging showed evidence of a prior total knee replacement, and treatment providers recommended a two-part revision of the total knee replacement, which Plaintiff underwent in October 2019 and January 2020.  (R. at 24.)  Plaintiff used a cane to ambulate and displayed slightly reduced strength

in the right quadriceps a few times post-surgery. (R. at 24.) The post-surgery records further showed that Plaintiff received some treatment for her hip and knee impairments, including oral medications and a heel lift, and had tenderness in the right knee and bilateral trochanteric bursae. (R. at 24.) The ALJ concluded that these impairments limited Plaintiff to work at a sedentary exertional level, required her to use a cane to ambulate, and contributed to her postural restrictions. (R. at 24.)

The ALJ also considered Plaintiff's history of back pain. (R. at 24.) In December 2021, Magnetic Resonance Imaging ("MRI") showed scoliosis, neural foraminal stenosis, and mild canal stenosis. (R. at 24.) Shortly thereafter, Plaintiff established a treating relationship with a spinal specialist. (R. at 24.) Examinations remained unchanged and consistently showed Plaintiff had difficulty with heel and toe walking but otherwise retained good strength and sensation in her legs. (R. at 24.) However, the pain did not improve, and Plaintiff had an oblique lateral intrabody fusion and posterior spinal fusion in January 2023. (R. at 24.) Plaintiff reported that these procedures "dramatically improved both her pain and function." (R. at 24.) Regardless, the ALJ considered Plaintiff's lumbar impairment and associated pain in determining her need for a cane to ambulate and exertional and postural restrictions. (R. at 24.)

After considering the record evidence, the ALJ concluded: "Although [Plaintiff's] impairments do cause some symptoms, the objective findings contained in the record, her statements to providers for treatment purposes, and her admitted ability to perform a variety of daily tasks all suggest that these symptoms are not as severe or as limiting as she claims." (R. at 25.) Regarding the objective findings, the ALJ explained that although the medical records showed right knee tenderness and crepitus, tenderness in the right hip, and an abnormal or cane assisted gait at times, the record otherwise contained largely normal findings. (R. at 25.)

7

Treatment providers frequently noted Plaintiff had good strength in all areas and did not note diminished dexterity in her hands, deficits in her concentration, or that she appeared uncomfortable at appointments.  (R. at 25.)  Next, the ALJ found that Plaintiff's statements and reports to treatment providers did not support the alleged severity of her impairments.  (R. at 25.)  Plaintiff did not disclose most of her alleged limitations, including difficulty using her hands or the need to lie down for most of the day, to treatment providers despite receiving regular treatment.  (R. at 25.)  Finally, the ALJ concluded that Plaintiff's activities of daily living, including her ability to care for her personal needs with some difficulty, perform light housework, prepare simple meals, drive short distances, and go out to eat or to the movies, supported her ability to perform sedentary work with a cane and additional postural limitations.  (R. at 25.)

The ALJ then considered the medical opinions and prior administrative medical findings. (R. at 25-26.)  State agency reviewing physicians opined that Plaintiff could carry and lift 20 pounds occasionally and 10 pounds frequently, stand and walk for six hours, and sit for six hours in an eight-hour workday.  (R. at 25.)  They also found Plaintiff limited to occasional climbing of ladders, ropes, and scaffolds and frequent climbing of ramps and stairs, kneeling, crouching, and crawling.  (R. at 25.)

The ALJ found these opinions only somewhat persuasive.  (R. at 26.)  She found that the medical evidence reflected a need for greater standing and walking, lifting and carrying, and postural limitations because of Plaintiff's bilateral hip impairments, degenerative joint disease of the right knee, degenerative disc disease, and obesity.  (R. at 25.)  The ALJ concluded that Plaintiff could stand and walk with the use of a cane and lift and carry as is necessary for work at the sedentary exertional level.  (R. at 26.)  The ALJ supported this conclusion with evidence from the record, including gait and strength assessments, and Plaintiff's testimony that she must use a cane

to ambulate.  (R. at 25-26.)  The ALJ also determined that Plaintiff's medical records and activities of daily living supported the frequent kneeling, crouching, and crawling limitations, and occasional climbing limitations.  (R. at 26.)  The ALJ similarly found that the state agency reviewing physicians' opinions about Plaintiff's ability to sit were consistent with the medical evidence.  (R. at 26.)

The ALJ also considered the medical opinions of Plaintiff's treatment providers.  (R. at 26.)  In October 2021, Plaintiff's treatment providers opined that she could frequently lift and carry ten pounds, stand and walk for less than one hour, and sit for one hour in an eight-hour workday.  (R. at 26.)  They also noted that Plaintiff required a cane to ambulate; had limitations in handling, seeing, hearing, speaking, and working around extreme temperatures and fumes; and could never climb, stoop, kneel, crouch or crawl.  (R. at 26.)

The ALJ found those opinions unpersuasive, other than "the limitation they assess in [Plaintiff's] need to use a cane."  (R. at 26.)  First, the ALJ determined that these opinions were "not consistent with the evidence, which establishes that the [Plaintiff] has a greater capacity for sitting, standing, walking, lifting, carrying, and performing postural tasks" and "suggests that she can handle, see, hear, speak, work around fumes and temperature extremes, and interact with screens without restriction."  (R. at 26.)  The ALJ explained that: (1) "no clinician has described diminished strength or sensation in [Plaintiff's] upper extremities;" (2) Plaintiff "has not displayed abnormalities in speech, vision, or hearing;" and (3) Plaintiff "has not complained of headaches with screen use, difficulty interacting with extreme temperatures, or trouble handling fumes."  (R. at 26.)  Second, the ALJ found that the examination notes of Plaintiff's treatment providers "do not document substantial abnormalities in [Plaintiff's] physical presentation" and that they

otherwise did "not support the limitations they identify with specific findings" in the questionnaire. (R. at 26.)

At step four, the ALJ found that Plaintiff could perform her past relevant work as a referral and information aide considering her RFC. (R. at 27.) The VE's testified "that a person of the same age, education, and work history as the [Plaintiff], with the limitations described, would be able to perform the duties of [a referral and information aide] as it is generally performed." (R. at 27.) The ALJ found that testimony consistent with the Dictionary of Occupational Titles ("DOT") and the VE's professional experience and adopted it. (R. at 27.) Therefore, the ALJ concluded: "[I]n comparing [Plaintiff's] residual functional capacity with the physical and mental demands of her past relevant work as a referral and information aide, she is able to perform this work as generally performed." (R. at 27.)

In addition, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy based on her age, education, work experience, transferable skills, and RFC. (R. at 27-28.) The ALJ determined Plaintiff's vocational factors, including that she had at least a high school education, met the definition of an individual of advanced age at the alleged onset date and subsequently changed age category to closely approaching retirement age, and had clerical skills from her past relevant work that transferred with little to no occupational adjustment to representative occupations. (R. at 27-28.) Based on those vocational factors and the VE's testimony, the ALJ found Plaintiff could perform the job of general office clerk. (R. at 28.) Although classified as light work under the DOT, the VE testified that the general office clerk occupation had about one million jobs at the sedentary level. (R. at 28.) The ALJ found that the VE's testimony did not conflict with agency policy and that any conflict with the DOT was reasonably explained in light of the VE's professional experience, knowledge, and training in the

10

field of vocational rehabilitation.  (R. at 28.)  Therefore, the ALJ accepted the VE's testimony.  (R. at 28.)

The ALJ ultimately found Plaintiff not disabled from September 1, 2019 (the alleged onset date) through June 21, 2023 (the date of the decision).  (R. at 28-29.)

## IV.    ANALYSIS

Plaintiff raises two[4] challenges to the ALJ's decision.  First, Plaintiff argues that the ALJ erroneously evaluated her subjective complaints by cherry-picking her "good moments" from the record. (Pl.'s Mem. at 15-17.)  Second, Plaintiff asserts that the ALJ misclassified her past relevant work as sedentary rather than light work and as a non-composite job and thus erred in finding Plaintiff capable of performing her past relevant work at step four.  (Pl.'s Mem. at 9-15.)  The Court addresses each argument below and finds no reversible error.

### A.  The ALJ Applied Correct Legal Standards in Evaluating Plaintiff's Subjective Statements, and Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff contends that the ALJ erred in evaluating her subjective complaints.  (Pl.'s Mem. at 15-17.)  Specifically, Plaintiff argues that the ALJ "cherry-picked" the medical evidence to "'highlight[]' . . . [her] good moments." (Pl.'s Mem. at 16.)  Contrary to Plaintiff's argument, the ALJ evaluated Plaintiff's subjective complaints as required by applicable legal standards and did not selectively consider the record evidence.  Moreover, the ALJ provided a clear path to her reasoning regarding Plaintiff's impairments and limitations, and substantial evidence supports the RFC determination.

The regulations provide a two-step process for evaluating Plaintiff's subjective complaints.  20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1119029.  First, the ALJ must determine

---

[4] Plaintiff's briefing identifies three questions presented.  (Pl.'s Mem. at 2.)  Because two challenge the ALJ's conclusions at step four, the Court addresses those together.

"whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p). Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* The ALJ must consider all available evidence in this determination, including objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of the symptoms, and medical opinions and statements from others. *Id.* The claimant does not need to produce objective evidence to satisfy this second prong. *Id.*

Here, the ALJ followed the two-step process. At the first step, the ALJ found that Plaintiff's medically determinable impairments could lead to the alleged symptoms. (R. at 23.) At the second step, and "[a]fter careful consideration of the evidence," the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 23-24.) While Plaintiff contends that the ALJ failed to comply with her obligations under the second step "by selectively citing evidence from the record" (Pl.'s Mem. at 15), the ALJ's decision shows otherwise.

The ALJ acknowledged treatment and medical findings justifying significant limitations. (R. at 23-25.) Specifically, the ALJ found that Plaintiff's pain and other symptoms limited her to sedentary work, required the use of a cane to walk, and resulted in additional postural limitations. (R. at 24.) The ALJ then provided multiple reasons for rejecting Plaintiff's contention that her subjective complaints justified more severe limitations.

First, the ALJ cited the objective evidence as support for her conclusion that Plaintiff's symptoms were not as severe or as limiting as she alleged. (R. at 25.) The ALJ acknowledged that examination findings showed tenderness in Plaintiff's right knee and hip, as well as occasional mild quadricep weakness or an abnormal, cane-assisted gait. (R. at 25.) However, based on a review of the entire record, the ALJ found Plaintiff's physical examinations were largely normal. (R. at 25.) For example, treatment providers generally found Plaintiff displayed good strength in all areas and noted no abnormalities in her dexterity, no deficiencies in her ability to concentrate, and no discomfort at appointments. (R. at 25.)

Second, the ALJ found Plaintiff's statements to treatment providers inconsistent with her subjective complaints. Despite receiving regular treatments for her impairments, Plaintiff failed to disclose "most of her limitations" to treatment providers. (R. at 25.) For example, Plaintiff did not report needing to lie down for several hours each day or difficulty using her hands. (R. at 25.) Instead, she reported dramatic improvement following her treatment both in terms of pain and function, which the ALJ found supported an ability to perform sedentary work with the use of a cane for walking. (R. at 24 (internal record citations omitted).)

Third, the ALJ considered inconsistencies between Plaintiff's subjective complaints and her daily activities. The ALJ noted that Plaintiff reported to treatment providers that "she had been independent in activities of daily living" prior to her January 2023 surgery. (R. at 25, 1684.) The ALJ also acknowledged how Plaintiff qualified her ability to perform such activities. (R. at 23, 25.) Thus, contrary to Plaintiff's contention, the ALJ did not cherry-pick "good" evidence from the "bad" to support her conclusions. *See Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 362 (4th Cir. 2023). Instead, the ALJ acknowledged that Plaintiff could care for her personal needs but had *difficulty* dressing due to her physical impairments. (R. at 23, 25, 195, 220, 222.) Plaintiff

also reported an ability to perform *light* household chores for *short* durations, prepare *simple* meals, drive *short* distances three times per week, and *occasionally* go out to eat and to the movies. (R. at 23, 25, 41-42, 47-49, 196-98, 214-15, 219-20, 222-25.)    After properly considering Plaintiff's activities of daily living, including the extent to which she could perform them, the ALJ concluded that her ability to perform a variety of activities did not support the severity of her subjective allegations.  (R. at 25.)

Overall, the ALJ recognized evidence of abnormality and significant findings within the medical record as supporting a limitation to sedentary work, use of a cane for walking, and additional postural limitations.  At the same time, the ALJ relied on normal medical findings, Plaintiff's statements to treatment providers, and Plaintiff's activities to justify not including further limitations in the RFC.  In doing so, the ALJ applied the correct legal standards and reasonably concluded, based on the evidence, that Plaintiff's statements about the intensity and persistence of her symptoms were not entirely consistent with the other evidence on file. Substantial evidence supports the ALJ's decision, and the Court declines Plaintiff's invitation to reweigh the evidence.  *See Hancock*, 667 F.3d at 472, 476.

B.  **The ALJ Did Not Misclassify Plaintiff's Past Relevant Work**

Plaintiff next argues that the ALJ misclassified her past relevant work as a referral and information aide position, a sedentary position, when it should have been classified as a routine office clerk position, a light position.  (Pl.'s Mem. at 9-15.)  Specifically, Plaintiff contends that the ALJ adopted the VE's classification of her past work without considering the "actual physical requirements of the job" or that it "could be a composite job."  (Pl.'s Mem. at 11, 13.)   Plaintiff has not shown that the ALJ erred in considering and adopting the VE's testimony regarding the classification of Plaintiff's past relevant work, and substantial evidence supports the ALJ's step

14

four determination.  Moreover, the ALJ also found at step five that Plaintiff could perform other work available in the national economy as a general office clerk, which Plaintiff does not challenge.  (R. at 27-28.)  Therefore, the Court finds no reversible error.

At step four, the ALJ must assess the claimant's RFC and past relevant work, including the associated physical and mental demands, to determine whether the claimant is able to perform the tasks of his or her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv), (f).  The regulations provide that if a claimant can return to his or her past relevant work as the claimant actually performed it or as it is generally performed, then he or she is not disabled.  *Id.* §§ 404.1520(f), 404.1560(b)(3).

Under Social Security Ruling 82-61,[5] a claimant retains the capacity to perform his or her past relevant job where he or she can perform either (1) the particular functional demands and job duties peculiar to an individual job as actually performed; or (2) the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.  SSR 82-61, 1982 WL 31387 (Jan. 1, 1982); *see Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995) ("The two tests [in SSR 82-61] are clearly meant to be disjunctive.  If the claimant is found to satisfy either test, then a finding of not disabled is appropriate.").  Here, under the second prong, the ALJ found Plaintiff able to perform her past work as a referral and information aide as generally performed.  (R. at 27.)

At the administrative hearing, the ALJ solicited testimony from Plaintiff regarding her past relevant work and from the VE to classify Plaintiff's past job as actually and generally performed.  (R. at 59.)  Plaintiff previously worked as an "[o]ffice services specialist 2" for the Virginia

---

[5] Claims involving past relevant work prior to June 22, 2024, are evaluated using Social Security Ruling 82-61.  SSR 82-61, 1982 WL 31387 (Jan. 1, 1982); (*see also* Pl.'s Mem. at 10; Def.'s Mem. at 13).

Department of Health.  (R. at 44, 177, 187.)  On the Adult Disability Report and Work History Report completed when Plaintiff applied for benefits in October 2020, she described her duties as "provid[ing] customer service, fill[ing] out paperwork, answer[ing] phone calls, go[ing] through files, [and] process[ing] reports."  (R. at 177, 188.)  She further indicated that she lifted and carried ten pounds frequently and thirty pounds once every three months.  (R. at 178, 188.)  Plaintiff reported walking three hours, standing four hours, and sitting five hours each day.  (R. at 178, 188.)

At the hearing, Plaintiff confirmed the accuracy of the Work History Report, further adding that "[i]t was a lot of standing and walking, sitting, carrying, lifting, explaining, and researching, basically."  (R. at 44.)  She further testified that she sat in the front office and would greet and then assist customers over the phone or in person with paperwork needs, researching files, and other clerical matters.  (R. at 44, 59.)  Plaintiff stated that she lifted "[a]t least 40 to 50 pounds, maybe more at times" when she moved "big boxes of files."  (R. at 45.)

After considering Plaintiff's testimony and Work History Report, the VE classified Plaintiff's past relevant work as a "referral and information aide" under DOT 237.367-042.[6]  (R.

---

[6] The DOT defines "referral and information aide" as follows:

> Receives callers and responds to complaints in person or by telephone for government agency: Questions callers to ascertain nature of complaints against government agency; records complaint on standard form; and routes form to appropriate department or office for action. Contacts department or office to which complaint was referred to determine disposition. Contacts complainant to verify data and follow-up on results of referral. Compiles complaint records, by category, department office, and disposition. Notifies supervisor of patterns of poor provision of service. Maintains up-to-date reference materials and files.

DOT 237.367-042.

at 59.)  The VE testified that the "referral and information aide" position qualifies as sedentary work as generally performed and medium work as actually performed by Plaintiff.  (R. at 59.)

The ALJ asked the VE whether a hypothetical individual of Plaintiff's age and education who is limited to the sedentary exertional level; who could frequently kneel, crouch, and crawl, and occasionally climb; who should never be exposed to vibrations; and who would require the use of a cane to ambulate would be able to perform Plaintiff's past relevant work as actually or generally performed.  (R. at 60, 62.)  The VE opined that such hypothetical individual could perform the past relevant work as customarily performed.  (R. at 62.)  When asked if her testimony was consistent with the DOT, the VE confirmed that it was, with the exception of her opinions on climbing limitations and cane use, which are not mentioned in the DOT so were based on the VE's professional experience, training, and education.  (R. at 63.)

The ALJ found the VE's testimony consistent with the DOT and based on her experience. (R. at 27.)  Therefore, the ALJ concluded that Plaintiff could perform her past relevant work as a referral and information aide as generally performed given her RFC.  (R. at 27.)  This conclusion finds substantial support in the evidence.  *See Pearson v. Colvin*, 810 F.3d 204, 207-08 (4th Cir. 2015) (finding that the ALJ may rely on the DOT and VE testimony consistent with the DOT); *Kimberly M. v. Kijakazi,* No. 2:22-cv-351, 2023 WL 4982794, at *5 (E.D. Va. July 11, 2023) (same), *report and recommendation adopted*, 2023 WL 4977756 (E.D. Va. Aug. 3, 2023).

In arguing otherwise, Plaintiff contends that the ALJ erred in classifying her past relevant work as a referral and information aide.  (Pl.'s Mem. at 11-12.)  Plaintiff argues that the ALJ should

17

have classified her past relevant work as "Office Clerk, Routine," DOT 209.562-010,[7] based on the "customer service . . . [and] actual physical requirements" of her prior position. (Pl.'s Mem. at 11-12.) Plaintiff, however, provides no vocational evidence to support her lay interpretation of the DOT. *See Davis v. Comm'r of Soc. Sec.*, No. 1:11-cv-2779, 2013 WL 153594, at *2 (D. Md. Jan. 14, 2013) (rejecting a reliance on "lay interpretation of the DOT"). Moreover, at the administrative hearing, Plaintiff's counsel asked the VE how she arrived at the referral and information aide classification:

> Q      Okay. And I'm looking at the referral and information aid[e] and I'm looking at the description and I don't see a single thing that mentions clerical work in there, so am I missing something?
> A      She was providing information based on her customer service activities.
> Q      She was standing on her feet, and she was lifting up to 35 pounds. I don't see any of that mentioned in the referral and information aid[e], but I do see the general office clerk position.
> . . . .
> VE:    . . . . My answer hasn't changed.

(R. at 64-65.) The ALJ properly relied on the VE's testimony regarding classification of Plaintiff's past relevant work, which the ALJ found consistent with the DOT and the VE's experience.

---

[7] The DOT defines this position as follows:

> Performs any combination of following and similar clerical duties requiring limited knowledge of systems or procedures: Writes, types, or enters information into computer, using keyboard, to prepare correspondence, bills, statements, receipts, checks, or other documents, copying information from one record to another. Proofreads records or forms. Counts, weighs, or measures material. Sorts and files records. Receives money from customers and deposits money in bank. Addresses envelopes or packages by hand or with typewriter or addressograph machine. Stuffs envelopes by hand or with envelope stuffing machine. Answers telephone, conveys messages, and runs errands. Stamps, sorts, and distributes mail. Stamps or numbers forms by hand or machine. Photocopies documents, using photocopier.

DOT 209.562-010.

Plaintiff's lay opinion, without more, is insufficient to undermine the substantial evidentiary basis for the ALJ's contrary conclusion.

Plaintiff next contends that, "[i]n relying on the VE's testimony, the ALJ improperly focuses on the customer service aspect of [Plaintiff's] work and fails to include the actual physical requirements of the job." (Pl.'s Mem. at 11.)  The record shows otherwise.  Both the VE and the ALJ acknowledged the physical demands of Plaintiff's past relevant work by categorizing it as "medium as actually performed." (R. at 27, 59.)  The physical demands of her work as actually performed, however, do not render the referral and information aide classification error.  Indeed, the regulations draw a distinction between past relevant work as a claimant *actually* performed it and as *generally* performed in the national economy.  20 C.F.R. §§ 404.1520(f), 404.1560(b)(3).  Moreover, "the test for evaluating Plaintiff's past relevant work experience is not whether she may perform the heightened demands of her actual position, but the demands as generally required by employers throughout the economy." *Teresa v. Saul*, No. 3:19-cv-462, 2020 WL 5228161, at *5 (E.D. Va. Aug. 17, 2020) (citing SSR 82-61), *report and recommendation adopted sub nom. Teresa C. v. Saul*, 2020 WL 5204084 (E.D. Va. Sept. 1, 2020).

Plaintiff next argues that the ALJ should have considered whether Plaintiff's past relevant work was a composite job and erred by failing to explain her findings on that issue. (Pl.'s Mem. at 12.)  Specifically, Plaintiff argues that the VE's testimony that clerical skills would transfer but other industry specific skills would not transfer suggests that Plaintiff's "past work could be a composite job." (Pl.'s Mem. at 13.)  This argument does not persuade.

A composite job is one that does not fit into a single DOT category as it "has 'significant elements of two or more occupations and, as such, [has] no counterpart in the DOT.'" *Jones v. Colvin*, No. 3:15-cv-195, 2016 WL 786626, at *3 (E.D. Va. Feb. 4, 2016) (citing SSR 82–61),

*report and recommendation adopted*, 2016 WL 816792 (E.D. Va. Feb. 26, 2016). Here, the ALJ, based on the VE's testimony, concluded that Plaintiff's past relevant work fit into a single DOT category. While Plaintiff's counsel at the hearing level asked the VE whether either the exertional nature of Plaintiff's past work as actually performed or the transferable clerical skills[8] made her job a composite position, the VE answered in the negative. (R. at 64-65.) Indeed, "[t]he fact that the exertional or functional requirements of the job as Claimant actually performed it were in excess of the DOT definition, does not make it a composite position." *Felty v. Saul*, No. 2:19-cv-232, 2019 WL 6997916, at *12 (S.D. W. Va. Nov. 27, 2019), *report and recommendation adopted*, 2019 WL 7018257 (S.D. W. Va. Dec. 18, 2019). Similarly, transferability involves "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs." SSR 82-41, 1982 WL 31389, at *2. The fact that a position may involve transferable skills does not convert it into a composite job. On this record, based on the VE's testimony, which the ALJ found consistent with the DOT and based on the VE's professional experience, the ALJ did not err in classifying Plaintiff's past relevant work as a non-composite job. Because substantial evidence supports the ALJ's conclusion that Plaintiff could return to her past position as a referral and information aide, the Court finds no error in the ALJ's step four analysis.

In addition, the ALJ proceeded to step five and also concluded that Plaintiff could perform other work existing in significant numbers in the national economy based on her age, education,

---

[8] The VE testified that Plaintiff "acquired the ability to meet and greet people or interact with people, meet deadlines, oral communication skills, the ability to analyze data, check for accuracy, investigating, recording facts, advising, interviewing" skills in her past relevant work. (R. at 59.) The VE stated that industry-specific skills would not transfer, but that the clerical part of her job would transfer with little, if any, vocational adjustments in terms of tools, work processes, work settings, and the industry. (R. at 60, 61.)

work experience, transferable skills, and RFC.  (R. at 27-28.)  Specifically, the VE testified that a hypothetical individual with Plaintiff's vocational factors could perform general office clerk work at the sedentary level.  (R. at 63.)  The VE stated that her testimony regarding the number of sedentary jobs within the general clerk position, specific limitations on climbing, and limitations on cane usage were based on her professional experience, training, and education.  (R. at 64.)  The ALJ found the VE's testimony consistent with agency policy, and after considering the VE's experience, the ALJ accepted her testimony.  (R. at 28.)  The ALJ's conclusion at step five renders the errors alleged by Plaintiff at step four harmless.  *See Carrie M. v. O'Malley*, No. 1:23-cv-12, 2024 WL 4266776, at *4 (M.D.N.C. Sept. 23, 2024); *Janell W. v. Kijakazi*, No. 1:22-cv-02339, 2023 WL 4456848, at *3 (D. Md. July 11, 2023) (finding "any error made at step four was harmless due to the ALJ's alternative step-five findings").

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 12), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 14), and AFFIRM the final decision of the Commissioner.  An appropriate Order will accompany this Memorandum Opinion.

_____   /s/
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 20, 2025